**IT IS ORDERED as set forth below:**



**Date: February 14, 2017**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 10-92243-WLH |
| | : | CHAPTER 7 |
| ALFONZA MCKEEVER, JR., | : | |
| | : | |
| Debtor. | : | |
| _____ | : | |
| | : | |
| CATHY L. SCARVER, AS TRUSTEE | : | |
| FOR THE ESTATE OF ALFONZA | : | |
| MCKEEVER, JR., | : | |
| | : | |
| Plaintiff, | : | ADVERSARY PROCEEDING |
| | : | NO. 15-5336-WLH |
| v. | : | |
| | : | |
| ROBERT ELLIS, MCKEEVER PAINT | : | |
| AND BODY, INC., ALFONZA | : | |
| MCKEEVER, JR., AND THE VIADUCT | : | |
| GROUP, INC., | : | |
| | : | |
| Defendants. | : | |

**ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

This matter is before the Court on Plaintiff Cathy L. Scarver's ("Plaintiff" or "Trustee") Motion for Partial Summary Judgment ("Motion") (Docket No. 28). The Court finds this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), and the Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

## PROCEDURAL HISTORY[1]

Debtor Alfonza McKeever ("Mr. McKeever") filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on October 29, 2010. The case was converted to one under Chapter 11 on July 13, 2011. The Court appointed Plaintiff as Chapter 11 Trustee on February 6, 2013. The court subsequently converted the case to one under Chapter 7 on April 25, 2013. Plaintiff continued in her role as trustee following the conversion of the case.

Trustee filed the instant adversary proceeding on August 27, 2015 against Mr. McKeever and his uncle Robert Ellis ("Ellis"), as well as McKeever Paint & Body ("MP&B") and Viaduct Group, LLC ("Viaduct"). The complaint consists of eleven counts, seeking an order: 1) avoiding certain post-petition liens pursuant to 11 U.S.C. § 549 (Counts One through Three); 2) finding that the same liens are void in violation of the stay pursuant to 11 U.S.C. § 362 (Counts Four through Six); 3) awarding the Trustee damages for violation of the automatic stay related to the disposition of certain insurance proceeds (Count Seven); 4) awarding the Trustee damages for violation of the automatic stay related to Defendants' continued occupancy of certain real property (Count Eight); 5) requiring turnover of the same property and an accounting of any monies earned from operations on the property during the case and turnover of the insurance proceeds at issue (Counts Nine and Ten); and 6) disallowing claims filed by Mr. McKeever's family members and businesses (Count Eleven) ("Complaint") (Docket No. 1). In response, Defendants filed one answer on behalf of all Defendants, and an amended answer shortly thereafter asking for Viaduct to be dismissed from the adversary proceeding (Docket Nos. 7 &

---

[1] The history of this case is set out in detail in this Court's Order Denying Debtor a Discharge and Denying Trustee's Recovery Under Section 362 ("Discharge Order") (Docket No. 26).

2

9). Mr. McKeever and Ellis signed both documents as individuals, and Joe Ann McKeever signed on behalf of MP&B and Viaduct, and as power of attorney for Mr. McKeever.[2]

The Court set down for trial Count Seven of Trustee's Complaint in conjunction with the trial of the United States Trustee's complaint to deny Mr. McKeever his discharge. The Court entered an order after trial denying Mr. McKeever's discharge, and also finding that the Trustee was not entitled to damages for the stay violation related to the insurance proceeds. The Trustee now seeks summary judgment on Counts One through Six and Eight through Nine and requests the Court use its equitable powers under 11 U.S.C. § 105 to avoid a newly filed mechanic's lien encumbering certain real property. None of the Defendants responded to the Motion.

## UNDISPUTED FACTS[3]

At all times during his bankruptcy case, Mr. McKeever has been the owner of certain business property located at 5361 Covington Highway, Decatur, Georgia ("Property"). Since its purchase, the Property has been used by Mr. McKeever and his family—a group of up to twenty-three different people—to operate various car related businesses. Mr. McKeever purchased the Property in 1995 and used the property to operate MP&B, a family-owned body shop business.

MP&B was a corporation in existence in 1995. Mr. McKeever was the principal operator of the business until suffering a serious injury in 1998 that left him incapacitated and unable to operate MP&B. The corporate registration of MP&B lapsed and the company was administratively dissolved on July 4, 1998, after which MP&B conducted no further business. As of the petition date, MP&B remained dissolved, was conducting no business, and had not filed tax returns in a number of years. Mr. McKeever continued to use MP&B as a trade name, and his schedules indicated that he owned 100% of MP&B. After the petition date, Mr.

---

[2] Plaintiff filed motions to strike the answers of MP&B and Viaduct on the basis that both entities were improperly acting without counsel (Docket Nos. 10 & 12). On December 15, 2015, the Court entered an order requiring MP&B and Viaduct to retain counsel by January 29, 2016, and further stating that "[i]f no appearance of counsel is made by that date, the Court may strike the Defendants' pleadings without further notice or hearing." (Docket No. 15). To date, no appearance of counsel has been made for either MP&B or Viaduct. The Court has not granted Plaintiff's motions to strike.

[3] The Court incorporates herein the facts found after trial and set out in the Discharge Order.

McKeever incorporated another MP&B in the State of Georgia on April 17, 2013 ("New MP&B") to open a bank account for the company in order to deposit the insurance proceeds that were the subject of the previous trial. The New MP&B used the same tax identification number as the original MP&B, and opened a bank account with Wells Fargo Bank. However, the original MP&B was not properly reinstated under Georgia law and did not regain status as a separate legal entity, instead remaining a trade name used by Mr. McKeever. The New MP&B was a corporation separate from the original MP&B.

In addition to MP&B, Ellis and Mr. McKeever's aunt, Delores Ellis, operated Viaduct as a body shop on the Property. Mr. McKeever stated in his Statement of Financial Affairs that he is an officer, director, self-employee or sole proprietor of Viaduct, which has been operating on the Property since at least 2004. The original and/or New MP&B and Viaduct have continued to do business on the Property throughout Mr. McKeever's case. Since the Trustee's appointment February 6, 2013, both MP&B (original and/or new) and Viaduct have continued to operate on the property but have not paid any rent to the Trustee since February 2014. In addition, since Trustee's appointment the Property has been encumbered by four liens:

- Ellis executed a mechanic's lien that was recorded on August 28, 2013 in the amount of $225,000 ("First Ellis Mechanic's Lien"). A document titled "Summary of Investments" is attached to the mechanic's lien, and shows a total investment of $225,000. The dates included on the summary are handwritten and indicate work done between March 2008 and August 12, 2013. The description of the work done simply reads "Interior".
- A deed to secure debt was executed between Mr. McKeever and Ellis ("Ellis DSD") that stated Mr. McKeever borrowed $40,000 from Ellis and repayment was secured by a lien on the Property. The deed was filed on October 23, 2013, and contemplated a final payment date of June 15 of an illegible year. The Ellis DSD was signed by Mr. McKeever as grantor, a notary public and an unofficial witness whose signature is illegible.
- A deed to secure debt was executed between Mr. McKeever and MP&B ("MP&B DSD") that stated Mr. McKeever borrowed $400,000 from MP&B and repayment was secured by a lien against the Property. The deed was filed on December 26, 2013 and contemplated a final payment date of January 25, 2014. The MP&B DSD was signed by Mr. McKeever as grantor, a notary public and Delores Ellis as an unofficial witness.
- Ellis executed a second mechanic's lien ("Second Ellis Mechanic's Lien") that was recorded on May 24, 2016, only one day after the Court entered an order

4

>denying Debtor's discharge. The amount of the Second Ellis Mechanic's Lien is $225,000.

Since assuming her role as trustee, Plaintiff has not ordered any work done on the Property. Further, the Court has not approved any of the liens listed above or any loans to the Debtor. Defendants do not dispute that Ellis and all signatories to the Ellis DSD and the MP&B DSD were aware of Mr. McKeever's bankruptcy case at the time the above-listed liens were executed. The Trustee argues that these liens should be avoided as unauthorized post-petition transfers or considered void in violation of the automatic stay.

## **CONCLUSIONS OF LAW**

*Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. When reviewing a motion for summary judgment, a court must examine the evidence in the

5

light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

*Overlap between Sections 362 and 549*

Trustee's Complaint seeks to invalidate the First Ellis Mechanic's Lien, the MP&B DSD and the Ellis DSD under both 11 U.S.C. § 549 and 11 U.S.C. § 362. Courts have struggled to articulate the exact degree of overlap between sections 549 and 362 when determining the validity of post-petition transfers. See 2 Collier on Bankruptcy 549.02A (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016). Some courts have found that section 549 deals only with actions taken by the debtor, while section 362(a) deals with actions taken by a creditor. See Hopkins v. Suntrust Mortgage, Inc. (In re Ellis), 441 B.R. 656 (Bankr. D. Idaho 2010); see also Slone v. Anderson (In re Anderson), 511 B.R. 481 (Bankr. S.D. Ohio 2013). Some courts, however, have found there is nothing in the language of the statute that imposes such a limitation. See,e.g., In re Howard, 391 B.R. 511 (Bankr. N.D. Ga. 2008) (stating the proposition that section 549 applies only to debtor-initiated transfers is "too broad a statement and is not found in the language of [section] 549 itself."). Others have held that the relevant distinction is between "actions which are merely unauthorized [e.g., section 549] and actions which are specifically prohibited by the Bankruptcy Code [e.g., section 362]." Warsco v. Shaller Trucking Co. (In re R. & L. Cartage & Sons), 118 B.R. 646, 650-51 (Bankr. N.D. Ind. 1991). One court found the relevant inquiry is whether the debtor is in possession of the estate when the transfer occurs. Gonzalez v. Beery (In re Beery), 452 B.R. 825 (Bankr. D.N.M. 2011).

While it is not clear to what extent the sections overlap, the critical differences between the sections appear to be (1) transfers that fall under section 549 are avoidable by the trustee, whereas actions in violation of section 362 are void and without effect; (2) section 549 includes a

defense for good faith transferees, whereas section 362 contains no such defense; and (3) section 549 includes a two year statute of limitations, whereas section 362 does not. Further indicating a distinction between the sections is the exception to the automatic stay located in 11 U.S.C. § 362(b)(24). Added as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, section 362(b)(24) states that any transfer that falls under section 549 that is found to be not avoidable shall not be a violation of the automatic stay. The limitations in section 549 and the exception located in section 362(b)(24) suggest the statutes cannot be used interchangeably and there are some transfers to which one section would apply, but not the other.

In the present case, however, the Court does not need to make a determination regarding the overlap of sections 549 and 362. The facts are such that the outcome does not depend on which section applies; because none of the transferees involved with any of the liens in question would be able to take advantage of the good faith defense under section 549(c) and all of the transfers occurred within the limitations period provided in section 549, if the liens are improper, they will either be avoidable post-petition transfers under section 549, or if section 549 is otherwise inapplicable, the liens will be void in violation of the automatic stay.

*Avoidance of Transfers under Section 549 – Counts One through Three*

Plaintiff first seeks summary judgment on Counts One, Two and Three of the Complaint. In these counts, Plaintiff alleges that the First Ellis Mechanic's Lien, the Ellis DSD and the MP&B DSD are subject to avoidance pursuant to 11 U.S.C. § 549. Section 549 provides in relevant part:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> > (1) that occurs after the commencement of the case; and
> >
> > (2)(A) that is authorized only under section 303(f) or 542(c) of [title 11]; or

7

      (B) that is not authorized under this title or by the court.

Put another way, section 549 permits the trustee to avoid a post-petition transfer of estate property if the transfer was made without court authorization and is not otherwise permitted by the Bankruptcy Code. The trustee's ability to avoid such transfers is limited by certain exceptions, though. Section 549(c) states that "the trustee may not avoid a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value…." 11 U.S.C. § 549(c). The rights of a trustee under section 549 are further limited by section 546, which provides in pertinent part:

> (b)(1) The rights and powers of a trustee under section[]…549 of [title 11] are subject to any generally applicable law that—
>
>  (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
>
>  (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.[4]

It is undisputed that the transfers in question occurred after the commencement of Mr. McKeever's bankruptcy case. The earliest transfer, the First Ellis Mechanic's Lien, occurred on August 28, 2013, nearly three years after the filing of the petition and more than six months after Trustee's appointment. A review of the docket in both Debtor's bankruptcy case and this adversary proceeding shows that the Court never authorized the filing of the First Ellis Mechanic's Lien. Additionally, the First Ellis Mechanic's Lien is not authorized by the Bankruptcy Code. After the appointment of the Trustee on February 6, 2013, Mr. McKeever was no longer a debtor-in-possession and could not transfer any interest in his property or incur debt. Once the Trustee was appointed, only the Trustee could transfer estate property or incur debt on behalf of the estate. See Vreugdenhil v. Hoekstra, 773 F.2d 213, 215 (8th Cir. 1985)

---

[4] In addition to the limitations in sections 549(c) and 546, a trustee's right to avoid post-petition transfers is limited by section 549(b). However, section 549(b) only applies in involuntary bankruptcy cases and is therefore not applicable to this matter.

(finding the debtor's authority over property of the estate was extinguished upon the appointment of a trustee). The alleged construction work on the property leading to the debt evidenced by the First Ellis Mechanic's Lien was not authorized by the Trustee.

Moreover, the transferee, Ellis, could not be considered a good faith purchaser under section 549(c) since he had knowledge of the case. In the Complaint, Plaintiff alleged that Ellis was aware of Mr. McKeever's bankruptcy case when he filed the First Ellis Mechanic's Lien. In Defendants' answer, Defendants admitted that Ellis was aware of Mr. McKeever's personal bankruptcy filing but he believed that MP&B was the owner of the property and therefore the pending bankruptcy did not matter. Further evidence of Ellis' knowledge of the case is that he filed four proofs of claim on August 29, 2013 (which are dated August 28, 2013, the same date as the First Ellis Mechanic's Lien) once he learned the case had been converted to Chapter 7 (Case No. 10-92243-WLH). Therefore, Ellis was aware of Mr. McKeever's bankruptcy case and cannot be considered a good faith transferee entitled to the protection of section 549(c).

Plaintiff's right to avoid the First Ellis Mechanic's Lien is also not limited by the relevant state law made applicable by section 546. Pursuant to O.C.G.A. § 44-14-361, an inchoate lien arises when someone performs labor or services or provides materials for the improvement of real property. O.C.G.A. § 44-14-361(a)(2). The lien will only arise under Georgia law if "the labor, services, or materials are furnished…at the instance of the owner, contractor, or some other person acting for the owner…" O.C.G.A. § 44-14-361(b). Plaintiff took control of the Property in her role as trustee when she was appointed on February 6, 2013. At no point since assuming her duties as trustee has Plaintiff consented to any work being done by Ellis on the Property, which is required for a lien to attach. See Anatek, Inc. v. CSX Realty Development, LLC, 243 Ga. App. 552 (2000).[5]

---

[5] To the extent Ellis argues the work was done at the behest of MP&B as a lessee of the Property, "[a] contract for improvements between a lessee and a materialman does not subject the interest of the lessor to a lien unless a contractual relationship exists between the lessor and the materialman as well." Nunley Contracting Co., Inc. v. Four Taylors, Inc., 192 Ga. App. 253, 254 (1989).

9

Additionally, a mechanic's lien will not be perfected unless the claimant follows all of the requirements set forth in O.C.G.A. § 44-13-361.1; if any of these requirements are not met, the lien cannot be effective or enforceable. See Ragsdale v. Chiu (In re Harbor Club, L.P.), 185 B.R. 959, 960 (Bankr. N.D. Ga. 1995). Among the many conditions listed in the statute is the requirement that the claimant file the mechanic's lien within 90 days of completion of the work. O.C.G.A. § 44-14-361.1(a)(2). The documentation attached to the First Ellis Mechanic's Lien indicates the work that is the basis for the claim began in 2008 and continued through August 2013, when the lien was filed. However, Trustee's control over the Property began more than 90 days prior to the lien being filed. During that 90 day window, Trustee did not authorize any of the work listed in the First Ellis Mechanic's Lien. As a result, the mechanic's lien was not timely filed and would not be enforceable under Georgia law. Because no exceptions apply, the First Ellis Mechanic's Lien is avoidable as an unauthorized post-petition transfer.

Both the Ellis DSD and the MP&B DSD were filed after the execution of the First Ellis Lien, in October 2013 and December 2013, respectively. Like the First Ellis Mechanic's Lien, it is undisputed that the transfers were not authorized by either the Court or the Bankruptcy Code. A review of the docket in both the Debtor's bankruptcy case and this adversary proceeding shows that the Court never authorized the Ellis DSD or the MP&B DSD and it is undisputed the Trustee did not execute the deeds to secure debt or authorize their execution.

The exceptions to liability mentioned above are also not applicable to either the MP&B DSD or the Ellis DSD. Section 549(c) does not apply to the MP&B DSD or the Ellis DSD because the relevant transferees had knowledge of Mr. McKeever's bankruptcy case at the time of the transfers and therefore could not be good faith purchasers. With respect to the Ellis DSD, the Complaint alleges that Ellis was aware of the case. Defendants' answer admits that Ellis was aware of the case but that he was only advised after the case was converted to one under Chapter 7. Additionally, Ellis filed proofs of claim for certain mechanic's liens on August 29, 2013, nearly two months before the Ellis DSD was executed, demonstrating his actual knowledge of the case. With respect to the MP&B DSD, Defendants' answer admits that all relevant parties

were aware of Mr. McKeever's bankruptcy case. Furthermore, Joe Ann McKeever—Mr. McKeever's mother, who signed the MP&B DSD on behalf of MP&B—filed proofs of claim on behalf of MP&B as early as June 11, 2013, more than six months before the MP&B DSD was executed. Therefore, both Ellis and MP&B had knowledge of Mr. McKeever's bankruptcy case prior to the execution of the Ellis DSD and the MP&B DSD. Neither Ellis nor MP&B can be considered good faith transferees. No other exception to liability applies, and therefore the Ellis DSD and the MP&B DSD are both subject to avoidance under 11 U.S.C. § 549. Accordingly, summary judgment on Counts One through Three is warranted in favor of Plaintiff.

*Transfers Void in Violation of Automatic Stay – Counts Four through Six*

Trustee next seeks summary judgment on Counts Four, Five and Six, which allege the First Ellis Mechanic's Lien, the Ellis DSD and the MP&B DSD are void in violation of the automatic stay. The filing of a bankruptcy petition operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). The purpose of the automatic stay is to provide the debtor with the ability "to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." H.R Rep. 595, 95th Cong., 1st Sess., at 340-41 (1977), reprinted in 1978 U.S.C.C.A.N. 5693, 6296-97. The stay also serves to "protect[] the debtor from its pre-petition creditors by stopping all collection efforts, all harassment, and all foreclosure actions" while also "protect[ing] all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims." In re Lickman, 297 B.R. 162, 188 (Bankr. M.D. Fla. 2003) (citing Martino v. First National Bank of Harvey (In re Garofalo's Finer Foods, Inc.), 186 B.R. 414, 435 (N.D. Ill. 1995)). The Eleventh Circuit has ruled that transactions in violation of the automatic stay are void. See Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982).

It is undisputed that the transfers in question occurred after Mr. McKeever filed his bankruptcy petition while the automatic stay was in effect. Therefore the only question

remaining is whether an exception applies that would mitigate the violation of the stay. Though no exceptions apply to either the MP&B DSD or the Ellis DSD, Defendants suggested a possible exception for the First Ellis Mechanic's Lien. Specifically, Defendants' answer raised the applicability of section 362(b)(3), which states that the stay does not apply to efforts to perfect a lien under applicable state law.[6] Defendants argued that a mechanic's lien could be validly perfected without violating the automatic stay pursuant to section 362(b)(3). For that to be true, however, the lien in question must be validly created. Although the work that is the basis for the mechanic's lien allegedly began nearly two years pre-petition and continued through Trustee's appointment and the subsequent conversion of the case to one under Chapter 7, it is undisputed the Trustee as owner of the property did not authorize work to be done after February 6, 2013. A lien cannot be filed on unauthorized work. Anatek, 243 Ga. App. at 553. To the extent work was authorized prior to February 6, 2013, the lien claimant did not comply with the provisions of O.C.G.A. §§ 44-13-361(b) or 361.1(a)(2) when he did not file the mechanic's lien within 90 days of completing the work. Therefore the lien was not properly perfected and enforceable and the stay exception does not apply. Accordingly, the First Ellis Mechanic's Lien, the Ellis DSD and the MP&B DSD are void in violation of the automatic stay, and summary judgment is warranted for Plaintiff on the portion of Counts Four through Six declaring them void.[7]

*Post-Complaint Transfer*

In addition to the First Ellis Mechanic's Lien, the Ellis DSD and the MP&B DSD, the Trustee's Motion asks the court to invalidate the Second Ellis Mechanic's Lien, which was filed

---

[6] As mentioned previously, another exception that frequently arises in the context of post-petition transfers is section 362(b)(24), which states that the stay under section 362(a) does not apply to any transfer that falls within the scope of section 549 but is otherwise determined to not be avoidable as an unauthorized post-petition transfer. See, e.g., In re Howard, 391 B.R. 511, 515 (Bankr. N.D. Ga. 2008). Because the Court determined in the previous section that to the extent section 549 applies the First Ellis Mechanic's Lien is avoidable, there is no reason to address section 362(b)(24). To the extent section 549 does not apply to the First Ellis Mechanic's Lien, the stay exception in section 362(b)(24) is not applicable.

[7] In Counts Four, Five and Six of the Complaint, Trustee also sought damages pursuant to section 362(k), arguing that the post-petition transfers were willful violations of the automatic stay. However, Trustee did not request damages in the Motion; therefore, this Order shall be limited to the determination of whether the transfers are void in violation of the automatic stay.

one day after the Court entered the order denying Debtor's discharge. Pursuant to 28 U.S.C. § 1334(e), the bankruptcy court has "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of [its] case, and of property of the estate." This broad jurisdictional grant is implemented in part by 11 U.S.C. § 105, which gives the court the authority to enter any order necessary to effectuate the provisions of the Bankruptcy Code. 2 Collier on Bankruptcy 105.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016).

Section 105 however does not negate the need to comply with due process. The Second Ellis Mechanic's Lien is not the subject of the Complaint and the Defendants have not been served with any complaint including it nor have they been provided with an opportunity to answer Plaintiff's new allegations. Similarly, Plaintiff's request for an injunction against the Defendants preventing any further attempts to transfer interests in the property was not included in the Complaint, and requires proper notice before any determination of its merits can be made by the Court. Accordingly, to invalidate the Second Ellis Mechanic's Lien and grant an injunction against the Defendants, Plaintiff will need to amend the Complaint.

At this stage of the proceeding, Plaintiff requires the Court's permission to amend the Complaint. Fed. R. Civ. P. 15, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015, provides a permissive standard for amending a complaint. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A trial court has considerable discretion when determining whether to grant leave to amend a complaint. Looney v. Owens (In re Owens), 2006 WL 6589884, at *1 (Bankr. N.D. Ga. Oct. 11, 2006) (citing Jameson v. The Arrow Co., 75 F.3d 1528,1534-35 (11th Cir. 1996)). The Court believes that Plaintiff should have the opportunity to amend the Complaint. The repeated transfers of the Property post-petition have frustrated the Trustee's ability to gather and administer all assets of the estate. Allowing the Trustee to amend the Complaint to resolve the Second Ellis Mechanic's Lien and pursue an injunction against the Defendants will help the Trustee fulfill her statutory duties. Trustee's amendment of the Complaint must be filed within thirty days of the date hereof.

*Turnover of Property – Count Nine*

Plaintiff seeks summary judgment on a portion of Count Nine of the Complaint, which seeks turnover of the Property against all Defendants under 11 U.S.C. § 542.[8] The turnover provision of the code reads, in relevant part:

> [A]n entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of [title 11]…shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.[9]

11 U.S.C. § 542(a). By referring to section 363, which authorizes the trustee to "use, sell, or lease…property of the estate," the drafters of section 542(a) made it clear that the turnover obligation applies to property of the estate. In re Pyatt, 486 F.3d 423, 427 (8th Cir. 2007).

The turnover requirement under section 542(a) is self-executing and no demand by a trustee is required. See Hays v. Shaw (In re Shaw), 2010 WL 3397438, at *1 n.2 (Bankr. N.D. Ga. June 10, 2010) (citing Turner v. DeKalb Bank (In re Turner), 209 B.R. 558, 571 n.7 (Bankr. N.D. Ala. 1997)). However, turnover proceedings are strictly limited to actions to recover property that is indisputably part of the estate; in other words, a turnover action is not the appropriate tool for acquiring the right to use or possess property if the debtor's right to use or possess the property is subject to dispute. See In re Suncoast Towers South Assoc., 1999 WL 549678, at *10 (Bankr. S.D. Fla. June 17, 1999).

In the present case, the Court is aware of the commercial lease dated July 27, 2009 between Mr. McKeever individually as landlord and "The Viaduct Group (Delores Ellis)" as tenant, with a lease term of ten years ("Viaduct Lease"), as it is attached to MP&B's proof of

---

[8] In the Complaint, Count Nine also seeks a turnover of the insurance check or its proceeds, as well as an injunction preventing the Defendants from occupying the Property or otherwise interfering with Trustee's ownership of the Property. These requests were not included in the Motion and are therefore not within the scope of this Order.

[9] Under 11 U.S.C. § 101(15), an entity includes a "person", therefore section 542(a) includes Mr. McKeever and Ellis in addition to MP&B and Viaduct.

14

claim 11-1. The Trustee has not indicated whether the Viaduct Lease has been assumed or rejected, or whether the tenant has elected to exercise any rights under 11 U.S.C. § 365(h). Therefore, the Court cannot make a determination of whether turnover as to Viaduct is proper at this time. Nothing herein prohibits the Trustee, as the landlord, from exercising her powers under state law with respect to the Viaduct Lease and any defaults thereunder.

There are no issues of fact, however, with respect to Mr. McKeever, Ellis or MP&B. Accordingly, Mr. McKeever, Ellis and MP&B's (original and/or New MP&B) continued control over the Property warrants turnover under section 542. These Defendants have possession of and control over property of the estate, and are required by section 542(a) to turn the Property over to Plaintiff.

In the Motion, Plaintiff asks pursuant to section 542(a) that Defendants account for their use of the Property and pay fair and reasonable rent for the occupancy of the Property from the petition date through the filing of the Motion. Under section 542(a), an entity is required to "account for" property or the value of property to be returned to the estate to ensure that the estate receives everything to which it is entitled under section 541. This is true whether or not the property is in the entity's possession at the time, see, e.g., Taub v. Taub (In re Taub), 427 B.R. 208, 222 (Bankr. E.D.N.Y. 2010) (requiring debtor's husband to account for and deliver rental income from various rental properties that were part of the debtor's bankruptcy estate), or whether the property has been dissipated, see, e.g., In re Pilate, 487 B.R. 345, 351 (Bankr. D.D.C. 2013) ("If the entity is no longer in possession of the property at the time of the turnover proceeding, then the entity must account for and deliver the value of the property.") (internal quotation marks omitted). In other words, the obligation of an entity to "account for" and deliver property (or the value of the property) is meant to provide verification that the entity subject to

15

the turnover proceeding is returning all property that belongs to the estate. In the present case, what must be turned over to the Trustee is the Property and any rents received by Mr. McKeever, MP&B or Ellis for the Property. The rent reserved under the Viaduct Lease is $1,000 per month. The rental income from this lease is property of the estate. Mr. McKeever, MP&B and Ellis are ordered to account for and deliver to the Trustee all such income received.[10] Section 542(a) does not, however, require a turnover defendant to pay anything to the Trustee other than what has been received of property of the estate. Trustee's request for payment of the fair rental value of the Property, regardless of whether rent was paid, is denied.[11]

In the Motion, Plaintiff also seeks an order instructing the United States Marshal Service to forcibly evict Defendants from the Property. Courts have held that authority exists to order eviction from property belonging to the estate. See, e.g., Jensen-Carter v. Hedback (In re Stephens), 2012 U.S. Dist. LEXIS 72916, at *12-13 (D. Minn. 2012). The Court does not believe that an order for forcible eviction is appropriate at this time. A review of cases where courts exercise authority to evict a party from estate property shows that eviction is usually ordered as a last resort to enforce compliance with previously entered orders. See, e.g., In re Stephens, 2012 U.S. Dist. LEXIS 72916, at *13 (eviction ordered to enforce sale order); In re Searles, 70 B.R. 266, 273 (D.R.I. 1987) (eviction order upheld pursuant to terms of consent order entered by bankruptcy court); In re Watson, 2016 U.S. Dist. LEXIS 77684, at *23-24 (D.V.I. 2016) (eviction ordered to enforce sale order); Ragsdale v. Michas (In re Five Star Design & Builders, LLC), Adv. Proc. 05-06626, Docket Nos. 22, 33 (Bankr. N.D. Ga. 2006) (eviction stipulated to in consent order granting temporary restraining order and later ordered following failure to comply with temporary restraining order). That not being the case here, the Court

---

[10] Of course, the Trustee has a claim against Viaduct for any rent not paid under the lease.
[11] To the extent Trustee has some equitable claim for fair and reasonable rent for Defendants' continued occupation of the Property, for example a claim in *quantum meruit*, such claim is not resolved in this Order.

16

declines to order the United States Marshal Service to evict Defendants from the Property at this time. However, turnover under section 542 is proper as to Defendants Mr. McKeever, MP&B and Ellis with respect to the Property, and summary judgment on Count Nine is granted in favor of the Trustee to that extent.

*Occupation in Violation of Stay – Count Eight*

Finally, Plaintiff seeks summary judgment on Count Eight of the Complaint, which alleges that Defendants' continued occupation of the property is a violation of the automatic stay. The automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Many courts have found that section 362(a)(3) should be read in conjunction with section 542(a); because section 542 is self-executing, the failure on the part of the Defendants other than Viaduct to turn over the Property can constitute a violation of the stay. See 2 Collier on Bankruptcy 362.03[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) ("The failure of an entity in possession of estate property to turn over the property to the trustee would be a violation of section 362(a)(3) except as may otherwise be provided in section 542.") (citing Weber v. SEFCU (In re Weber), 719 F.3d 72 (2d Cir. 2013)). As previously mentioned, Viaduct holds a lease to use the Property and its legal right to occupy the Property until the Viaduct Lease expires or is terminated has not been determined. Thus, Viaduct's continued possession of the Property does not warrant turnover at this time and whether it is considered a violation of the stay needs the development of additional facts. It is undisputed however that Defendants Mr. McKeever, MP&B and Ellis have maintained control over the Property by continuing to occupy the premises and operating their businesses on the Property. This continued control over property of the estate constitutes a violation of the stay under 11 U.S.C. § 362(a)(3). Accordingly, summary judgment is granted in favor of Plaintiff against Defendants Mr. McKeever, MP&B and Ellis on

the portion of Count Eight finding those Defendants' occupation of the property to be a violation of the automatic stay.[12]

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that Plaintiff's Motion is **GRANTED** in part and **DENIED** in part, as provided herein:

1. Summary judgment on Count One is **GRANTED** in favor of the Plaintiff;

2. Summary judgment on Count Two is **GRANTED** in favor of the Plaintiff;

3. Summary judgment on Count Three is **GRANTED** in favor of the Plaintiff;

4. Summary judgment on Count Four is **GRANTED** in favor of the Plaintiff on the portion of that count seeking a determination that the First Ellis Mechanic's Lien is void;

5. Summary judgment on Count Five is **GRANTED** in favor of the Plaintiff on the portion of that count seeking a determination that the Ellis DSD is void;

6. Summary judgment on Count Six is **GRANTED** in favor of the Plaintiff on the portion of that count seeking a determination that the MP&B DSD is void;

7. Summary judgment on Count Eight is **GRANTED** in favor of the Plaintiff with respect to Defendants Mr. McKeever, MP&B and Ellis on the portion of that count seeking a determination that the continued occupancy of the Property is a violation of the automatic stay, and **DENIED** without prejudice with respect to Defendant Viaduct;

8. Summary judgment on Count Nine is **GRANTED** in favor of the Plaintiff with respect to Defendants Mr. McKeever, MP&B and Ellis, to the limited extent that turnover of the Property and any rent received therefrom is required. No judgment is entered on the requested turnover of insurance proceeds and injunction requested in the Complaint preventing the Defendants from occupying the Property or otherwise interfering with

---

[12] In Count Eight of the Complaint, as in Counts Four through Six, Plaintiff sought damages pursuant to section 362(k). However, Plaintiff did not request damages for Count Eight in the Motion; therefore, this Order shall be limited to the determination of whether the occupation of the Property is a violation of the automatic stay.

Plaintiff's ownership of the Property. Plaintiff's Motion is **DENIED** without prejudice with respect to Defendant Viaduct;

9. **FURTHER ORDERED** under Count Nine Defendants Mr. McKeever, MP&B and Ellis are ordered to turnover any rents received under the Viaduct Lease

10. **FURTHER ORDERED** under Count Nine, Plaintiff's request for eviction is **DENIED** without prejudice to Plaintiff renewing the request at a later date.

11. **FURTHER ORDERED** that Plaintiff shall file an amended complaint within 30 days following entry of this order.

The clerk is directed to serve a copy of this order on Plaintiff's counsel and all Defendants.

**END OF DOCUMENT**

**DISTRIBUTION LIST**

Cathy L. Scarver
P. O. Box 672587
Marietta, GA 30006

Alfonza McKeever, Jr.
4020 Berry Hill Trail
Stone Mountain, GA 30083

Robert Ellis
520 Aubrey Drive
Bogart, GA 30622

McKeever Paint & Body, Inc.
c/o its registered agent, Deloris Ellis
520 Aubrey Drive
Bogart, GA 30622

The Viaduct Group, Inc.
c/o its registered agent, Deloris Ellis
520 Aubrey Drive
Bogart, GA 30622