**IT IS ORDERED as set forth below:**

**Date: June 27, 2019**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 10-92243-WLH |
| ALFONZA MCKEEVER, JR., | CHAPTER 7 |
| Debtor. | |
| CATHY L. SCARVER AS TRUSTEE FOR THE ESTATE OF ALFONZA MCKEEVER, JR., | ADVERSARY PROCEEDING NO. 15-5336 |
| Debtor, | |
| v. | |
| ROBERT ELLIS, MCKEEVER PAINT & BODY, INC., ALFONZA MCKEEVER, JR., | |
| Defendants. | |

**ORDER ON PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

**THIS MATTER** is before the Court on Plaintiff Cathy L. Scarver's ("Plaintiff" or "Trustee") Second Motion for Partial Summary Judgment ("Motion") (Docket No. 129). The Court finds this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), and the Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

## PROCEDURAL HISTORY[1]

Debtor Alfonza McKeever ("Mr. McKeever") filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on October 29, 2010. The case was converted to one under Chapter 11 on July 13, 2011. The Court appointed Plaintiff as Chapter 11 Trustee on February 6, 2013. The court subsequently converted the case to one under Chapter 7 on April 25, 2013. Plaintiff continued in her role as trustee following the conversion of the case.

## UNDISPUTED FACTS

Mr. McKeever owned certain business property located at 5361 Covington Highway, Decatur, Georgia ("Property"). Mr. McKeever purchased the Property in 1995 and used the property with his family to operate various car related businesses including McKeever Paint & Body ("MP&B") and Viaduct Group, LLC ("Viaduct"). Viaduct was operated by Mr. McKeever's uncle Robert Ellis ("Ellis) and his aunt, Delores Ellis, and Mr. McKeever stated in his Statement of Financial Affairs that he was an officer, director, self-employee or sole proprietor of Viaduct.

Since the Trustee was appointed on February 6, 2013, the Property has been encumbered by five liens:

- Robert Ellis executed a mechanic's lien that was recorded on August 28, 2013 in the amount of $225,000 (the "First Ellis Lien").

---

[1] The history of this case is set out in detail in this Court's Order Denying Debtor a Discharge and Denying Trustee's Recovery Under Section 362 ("Discharge Order") (Doc. No. 26) and the Order on Plaintiff's Motion for Partial Summary Judgment (Doc. No. 30).

2

- A deed to secure debt was executed between Mr. McKeever and Robert Ellis and filed on October 23, 2013, securing an alleged debt in the amount of $40,000 ("Ellis DSD").

- A deed to secure debt was executed between McKeever Paint and Body and Mr. McKeever on December 26, 2013, securing an alleged debt in the amount of $400,000 ("MP&B DSD").

- On May 24, 2016, Ellis executed a second mechanic's lien to allegedly secure a debt in the amount of $225,000 ("Second Ellis Lien"), the same amount as the First Ellis Lien. The Second Ellis Lien refers to a summary of investments but fails to attach an itemization of improvements. The Second Ellis Lien was recorded in the DeKalb County Superior Court on May 24, 2016, one day after the Court entered an order denying the Debtor's discharge.

- On June 1, 2017, Viaduct executed a mechanic's lien to encumber the Property and to allegedly secure a debt in the amount of $250,000. The lien was recorded on June 1, 2017, in the DeKalb County Superior Court (the "Viaduct Lien"). The Viaduct Lien includes a summary of investments detailing supposed labor, services, equipment, and materials related to the Property from February 2007 through November 2009.

Since assuming her role as trustee, Plaintiff has not ordered any work done on the Property. Further, the Court has not approved any of the liens listed above or any loans to the Debtor. Defendants do not dispute that Ellis and all signatories to the Viaduct Lien were aware of Mr. McKeever's bankruptcy case at the time the above-listed liens were executed. The Trustee argues that these liens should be avoided as unauthorized post-petition transfers or considered void in violation of the automatic stay.

The Trustee filed the instant adversary proceeding on August 27, 2015 against Mr. McKeever, Ellis, MP&B, and Viaduct. The complaint sought, in part, to avoid the First Ellis Lien,

3

the Ellis DSD, and the MP&B DSD liens pursuant to 11 U.S.C. § 549 and to determine that the same liens were void in violation of the stay pursuant to 11 U.S.C. § 362. In response, Defendants filed one answer on behalf of all Defendants.

Plaintiff filed a motion for partial summary judgment. The Court entered an Order on February 15, 2017 (Doc. No. 30) granting in part and denying in part the Trustee's Motion for Summary Judgment. The Court determined that the First Ellis Lien, the Ellis DSD, and the MP&B DSD were all void, but the Court denied Plaintiff's request to avoid the Second Ellis Lien pursuant to 11 U.S.C. § 105 and ordered Plaintiff to file an amended complaint to address the Second Ellis Lien.

The Trustee filed a Motion to Amend the Complaint, which the Court granted. Plaintiff filed the First Amended Complaint on April 11, 2017 (Doc. No. 43) ("First Amended Complaint"), to avoid the Second Ellis Lien pursuant to section 549 (Count Twelve) and declare the transfer of the lien void as a violation of the automatic stay pursuant to section 362 (Count Thirteen). Plaintiff sought leave to file a Second Amendment to the Complaint to add claims regarding the Viaduct Lien. The Court granted the motion to amend, and Plaintiff filed the Second Amended Complaint (Doc. No. 82) ("Second Amended Complaint") on January 12, 2018 to avoid the Viaduct Lien pursuant to section 549 (Count Fourteen) and declare the transfer of the lien void as a violation of the automatic stay pursuant to section 362 (Count Fifteen).

On February 15, 2019, Plaintiff filed the Motion seeking judgment as a matter of law on Counts Twelve through Fifteen (Doc. No. 129). Debtor filed an objection and sought additional

4

time to respond to the Motion. The Court gave the Debtor 45 days to respond to the Motion. He filed his response to the Motion on April 15, 2019 (Doc. No. 136).[2]

For the reasons stated below, the Court finds that summary judgment is warranted.

## CONCLUSIONS OF LAW

Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts to demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Id.

---

[2] Mr. McKeever's handwritten response is largely incomprehensible. Although Mr. McKeever purports various civil rights provisions apply (including 18 U.S. Code § 241, 18 U.S.C. § 1001, 42 U.S. Code § 1983), the Court finds these are inapplicable.

5

Avoidance of Transfers under Section 549 – Counts Twelve and Fourteen

Plaintiff seeks summary judgment on Counts Twelve and Fourteen seeking to avoid the Second Ellis Lien and the Viaduct Lien as unauthorized post-petition transfers. Section 549 provides in relevant part:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
> (1) that occurs after the commencement of the case; and
> (2)
> (A) that is authorized only under section 303(f) or 542(c) of [title 11]; or
> (B) that is not authorized under this title or by the court.

Put another way, section 549 permits the trustee to avoid a post-petition transfer of estate property if the transfer was made without court authorization and is not otherwise permitted by the Bankruptcy Code. The trustee's ability to avoid such transfers is limited by certain exceptions, though. Section 549(c) states that "the trustee may not avoid a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value . . . . " 11 U.S.C. § 549(c). The rights of a trustee under section 549 are further limited by section 546, which provides in pertinent part:

> (b)(1) The rights and powers of a trustee under section[]...549 of [title 11] are subject to any generally applicable law that—
> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

It is undisputed that the transfers in question occurred after the commencement of Mr. McKeever's bankruptcy case. A review of the docket in both Debtor's bankruptcy case and this adversary proceeding shows that the Court never authorized the filing of the Second Ellis Lien or

6

the Viaduct Lien.  Additionally, the liens are not authorized by the Bankruptcy Code.  After the appointment of the Trustee on February 6, 2013, Mr. McKeever was no longer a debtor-in-possession and could not transfer any interest in his property or incur debt.  As the Court has previously explained, the trustee is the legal representative of the bankruptcy estate.  Once she was appointed, only the Trustee could transfer estate property or incur debt on behalf of the estate.  See Vreugdenhil v. Hoekstra, 773 F.2d 213, 215 (8th Cir. 1985) (explaining that although a debtor may enjoy trustee-like authority as debtors-in-possession when the bankruptcy case was a chapter 11 proceeding pursuant to 11 U.S.C. § 1107, that authority terminates when a case is converted to chapter 7).  The alleged construction work on the property leading to the debt evidenced by the Second Ellis Lien and the Viaduct Lien was not authorized by the Trustee.  Plaintiff took control of the Property in her role as trustee when she was appointed on February 6, 2013, and she has not consented to any work being done by Ellis or Viaduct on the Property, which is required for a lien to attach.  See Anatek, Inc. v. CSX Realty Development, LLC, 243 Ga. App. 552 (2000).

Additionally, a mechanic's lien will not be perfected unless the claimant follows all of the requirements set forth in O.C.G.A. § 44-13-361.1; if any of these requirements are not met, the lien cannot be effective or enforceable.  See Ragsdale v. Chiu (In re Harbor Club, L.P.), 185 B.R. 959, 960 (Bankr. N.D. Ga. 1995).  Among the many conditions listed in the statute is the requirement that the claimant file the mechanic's lien within 90 days of completion of the work.  O.C.G.A. § 44-14-361.1(a)(2).  The Second Ellis Lien was recorded in May 2016.  It fails to indicate when the work that is the basis for the claim occurred, but the lien is substantially similar to the Ellis Lien which was for improvements that began in 2008 and continued through August 2013.  However, Trustee's control over the Property began more than 90 days prior to the lien being filed.  During that 90-day window, Trustee did not authorize any of the work listed in the

7

Second Ellis Lien.  Similarly, the Viaduct Lien was not recorded within 90 days of completing the work.  The Viaduct Lien includes a summary of investments detailing supposed labor, services, equipment, and materials related to the Property from February 2007 through November 2009 totaling $250,000.  The Viaduct Lien was recorded on June 1, 2017, nearly eight years after the work was allegedly completed.  As a result, the mechanic's liens were not timely filed and would not be enforceable under Georgia law.

Moreover, the transferees, Ellis and Viaduct, cannot be considered good faith purchasers under section 549(c) since they had knowledge of the case.  The Court previously found that Ellis and all those who were responsible for the operation of Viaduct (Joe Anne McKeever, the registered agent and CEO of Viaduct, Ellis, Dolores Ellis, and the Debtor) had knowledge of the bankruptcy case. (Doc. No. 30.)  Accordingly, neither Ellis nor Viaduct can be considered good faith transferees.  No other exception to liability applies.  Therefore, the Second Ellis Lien and the Viaduct Lien are both avoidable as unauthorized post-petition transfers under 11 U.S.C. § 549 and summary judgment on Counts Twelve and Fourteen is warranted in favor of Plaintiff.

<u>Transfers Void in Violation of Automatic Stay – Counts Thirteen and Fifteen</u>

Plaintiff also seeks summary judgment on Counts Thirteen and Fifteen, which allege the Second Ellis Lien and the Viaduct Lien are void in violation of the automatic stay.  The filing of a bankruptcy petition operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).  The purpose of the automatic stay is to provide the debtor with the ability "to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."  H.R Rep. 595, 95th Cong., 1st Sess., at 340-41 (1977), reprinted in 1978 U.S.C.C.A.N. 5693, 6296-97.  The stay also serves to "protect[] the debtor from its pre-petition creditors by stopping all collection efforts, all harassment, and all

8

foreclosure actions" while also "protect[ing] all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims." In re Lickman, 297 B.R. 162, 188 (Bankr. M.D. Fla. 2003) (citing Martino v. First National Bank of Harvey (In re Garofalo's Finer Foods, Inc.), 186 B.R. 414, 435 (N.D. Ill. 1995)). The Eleventh Circuit has ruled that transactions in violation of the automatic stay are void. See Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982).

It is undisputed that the transfers in question occurred after Mr. McKeever filed his bankruptcy petition while the automatic stay was in effect. Mr. McKeever has suggested, though, that an exception to the automatic stay applies because the Bankruptcy Code does not stay efforts to perfect a lien under applicable state law. 11 U.S.C. § 362(b)(3). To the extent the Second Ellis Lien and the Viaduct Lien relate to work done after February 6, 2013,[3] such work was not authorized, and a lien cannot be filed on unauthorized work. Anatek, 243 Ga. App. at 553. As the Court has previously found, Plaintiff took control over the Property on February 6, 2013 and she did not authorize any work to be done after that date.

To the extent the Second Ellis Lien and Viaduct Lien relate to work allegedly done to the Property before February 6, 2013, an exception to the automatic stay does not apply because the liens were not properly recorded. To perfect a mechanic's lien, a claimant must follow all of the requirements set forth in O.C.G.A. § 44-14-361.1, including the condition that the claimant file the mechanic's lien within 90 days of completion of the work. O.C.G.A. § 44-14-361.1(a)(2). The Viaduct Lien includes a summary of investments detailing supposed labor, services, equipment, and materials related to the Property from February 2007 through November 2009 totaling $250,000. The Viaduct Lien was not recorded within 90 days of completing the work; rather, the

---

[3] It is unclear when the work relating to the Second Ellis Lien allegedly occurred because the Second Ellis Lien fails to attach documentation to indicate when the work that is the basis for the claim occurred.

9

Viaduct Lien was recorded on June 1, 2017, nearly eight years after the work was allegedly completed. While the Second Ellis Lien fails to attach documentation to indicate when the work that is the basis for the claim occurred, the lien is substantially similar to the Ellis Lien which was for improvements that began in 2008 and continued through August 2013. As the Court has explained, the Trustee took control of the Property when she was appointed on February 6, 2013, more than 90 days before the Second Ellis Lien was filed. As a result, the mechanic's liens were not timely filed and would not be enforceable under Georgia law.

Accordingly, the Second Ellis Lien and the Viaduct Lien were not properly perfected and enforceable. No exception to the automatic stay applies. The Second Ellis Lien and Viaduct Lien are therefore void in violation of the automatic stay, and summary judgment is warranted for Plaintiff on Counts Thirteen and Fifteen.

## CONCLUSION

**IT IS ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** the Second Ellis Lien and the Viaduct Lien are void and of no force or effect.

**IT IS FURTHER ORDERED** that the Defendants do not have any lien or secured claim against the proceeds of the sale of the Property held by Trustee.

### END OF DOCUMENT

**Distribution List**

W. Russell Patterson, Jr.
Ragsdale, Beals, Seigler, Patterson & Gray LLP
229 Peachtree Street, N.E., Suite 2400
Atlanta, GA 30303-1629

Cathy L. Scarver
PO Box 672587
Marietta, GA 30006-0044

United States Trustee
362 Richard Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

Alfonza McKeever, Jr.
4020 Berry Hill Trail
Stone Mountain, GA 30083

Alfonza McKeever, Jr.
c/o his mother, Joe Ann McKeever
520 Aubrey Drive
Athens, Georgia 30606

Alfonza McKeever
944 Martin Road
Stone Mountain, GA 30088

Alfonza McKeever
DKSO 2_X0065231
DeKalb County Jail
4415 Memorial Drive
Decatur, GA 30032